**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Ronald Williams, | ) | No. CV-07-0006-PHX-MHM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Richard Penn, | ) | |
| Defendant. | ) | |

In an anticipation of a bench trial set for November 10, 2009, this Court held a pre-trial conference on October 19, 2009. At that proceeding, the Parties agreed that there was no disputed issue of material fact concerning Plaintiff Ronald Williams' sole remaining claim—violation of his Fourteenth Amendment right to medical privacy—and that the Court could resolve the issue as a matter of law. Accordingly, the Court vacated the trial date and ordered the parties to submit simultaneous briefing concerning whether the disclosure made by Defendant Penn to Sgt. Boz violated the Plaintiff's right to medical privacy under the Fourteenth Amendment. (Dkt. #79). Having reviewed the Parties' filings, the Court issues the following Order.

## I. FACTUAL BACKGROUND

In the joint pretrial motion the Parties submitted to the Court, they agreed to the following facts. (Dkt. #74). Plaintiff is an inmate under the custody of the Arizona Department of Corrections ("ADC"). The event ("Event") that forms the basis of the

1 remaining claim in Count II of Plaintiff's Complaint, (Dkt. # 1), occurred on or about June 25, 2006, at the Arizona State Prison Complex ("ASPC"), Florence, Central Unit's Health Unit. At the time of the Event, Plaintiff was housed at ASPC-Florence-Central Unit. At the time of the Event, Defendant Richard Penn was employed by the ADC as a Correctional Registered Nurse (R.N.) at ASPC-Florence-Health Unit. At the time of the Event, Defendant was on duty at the Central Unit Health Unit.

On June 21, 2006, Plaintiff requested that Health Unit Security Officer Movonez get him medical help because he was having severe stomach pains. Defendant Penn told Health Unit Security Officer Movonez that Plaintiff had already been seen by the nursing staff on June 20, 2006, and given medicine. Plaintiff then told Health Unit Security Officer Movonez that he had not been seen on June 20. Health Unit Security Officer Movonez contacted his supervisor, Sgt. Boz, to clarify this situation and determine if medical care was warranted. Approximately 15-20 minutes later, after speaking with Defendant, Sgt. Boz told Plaintiff that Defendant had informed him that Plaintiff was seen on June 20, 2006, by nursing staff and given medication. Sgt. Boz also advised Plaintiff that Defendant had informed him of Plaintiff's diagnostic test result (which was a urinary tract infection). At that time, however, Sgt. Boz did not tell Plaintiff he had a urinary tract infection. Instead, he told Plaintiff that he had the "claps" and that Plaintiff needed to take all of his medication. In response, Plaintiff told Sgt. Boz that he had not received any medicine from the nursing staff, and asked Sgt. Boz "take medication for what?" Sgt. Boz then left and Nurse Norton came back to advise Plaintiff that he had a urinary tract infection. The conversation between Sgt. Boz and Plaintiff took place in front of approximately 4-6 other inmates and was overheard by them.

**II. DISCUSSION**

Following the lead of the Second and Third Circuits, this Court, in its June 25, 2008 Order, held that the constitutional right to privacy in one's medical information is not

inconsistent with incarceration.[1] (Dkt. #44, pp.5–6, 13 (citing Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001), and Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999))). On November 5, 2008, the Court denied in part and granted in part Defendant's motion to dismiss on qualified immunity grounds, granting Defendant's motion as to Plaintiff's claims for monetary relief, but denying his motion as to Plaintiff's instant claim for declaratory relief. (Dkt. #55, p. 10).[2] Accordingly, all that remains for the Court to decide is whether Defendant's disclosure of Plaintiff's medical condition to Sgt. Boz violated Plaintiff's right to medical privacy under the Fourteenth Amendment.

The privacy interest identified by this Court is not absolute. It may be limited by policies or regulations that are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) ("When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); Powell, 175 F.3d at 112 ("A regulation that impinges on inmates' [right to privacy in medical information] is therefore valid only if it "is reasonably related to legitimate penological interests." (internal quotations omitted)). Defendant argues that this Court need not consider whether Defendant's disclosure was reasonably related to a legitimate penological interest, as Plaintiff's medical condition—a urinary tract infection—is not serious enough to warrant constitutional protection for a prisoner. In other words, Defendant asserts that in medical

---

[1]This decision was made by Judge Paul G. Rosenblatt, who later recused himself from this case. (Dkt. #62).

[2]In his papers, Defendant once again raises the issue of qualified immunity. He argues that qualified immunity is complete immunity from suit, not merely monetary damages. The Court has already decided this issue and sees no reason to revisit its previous decision. Ninth Circuit law makes perfectly clear that qualified immunity does not immunize a defendant from a suit for declaratory relief. Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) ("[Q]ualified immunity is only an immunity from a suit for damages, and does not provide immunity from suit for declaratory or injunctive relief."); Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993) ("Qualified immunity . . . does not bar actions for declaratory or injunctive relief.").

1 privacy cases involving prisoners, only medical conditions that meet a certain threshold of
2 seriousness implicate the constitutional right to medical privacy. The Court, however, does
3 not need not answer this question, as assuming, without deciding, that Plaintiff has a
4 constituonally protected privacy interest in the non-disclosure of his urinary tract infection,
5 Defendant's disclosure was reasonably related to a legitimate penological interest.

6 Plaintiff argues that Defendant's actions were not related to a legitimate penological
7 interest because Defendant's disclosure of Plaintiff's medical condition to Sgt. Boz had
8 nothing to do with treatment of the stomach ailment of which Plaintiff complained. The
9 Court disagrees. Plaintiff was complaining of severe stomach pains. Health Unit Security
10 Officer Movonez had received conflicting accounts from Plaintiff and Defendant concerning
11 when and if Plaintiff had received medical attention. This back and forth obviously
12 concerned Health Unit Security Officer Movonez, so much so that he turned to Sgt. Boz for
13 help in determining whether Plaintiff should be transferred to the health unit for treatment.
14 Sgt. Boz, in turn, went to discuss Plaintiff's medical status with Defendant in an effort to
15 resolve the situation. Nothing in the record suggests that the actions of Health Unit Security
16 Officer Movonez and Sgt. Boz were taken for any purpose other than to ensure, if necessary,
17 Plaintiff received proper medical attention. By telling Sgt. Boz that Plaintiff had a urinary
18 tract infection, Defendant may reasonably have believed that he was providing information
19 necessary for Sgt. Boz to reach the proper decision as to what additional care, if any, Plaintiff
20 should receive. Viewed in this light, the Court finds Defendant's disclosure was reasonably
21 related to securing Plaintiff's health and well being, or, in other words, his safety. And "the
22 penological interest in security and safety is applicable in all correction facilities." Bull v.
23 City and County of San Francisco, 595 F.3d 964, 974 (9th Cir. 2010).

24 Additionally, Defendant Penn's disclosure was not made in front of other people and
25 there is no indication that it was intended to be humorous or for the purposes of gossip. See
26 Powell 175 F.3d at 112 ("the gratuitous disclosure of an inmate's confidential medical
27 information as humor or gossip . . . is not reasonably related to a legitimate penological
28 interest, and it therefore violates the inmate's constitutional right to privacy."). While the

Court agrees with Plaintiff that other alternatives existed to the disclosure of the urinary-tract infection to Sgt. Boz, it was not unreasonable for Defendant to determine that only by appraising Sgt. Boz of the relatively routine nature of Plaintiff's condition could the appropriate resolution to the situation be found and the penological goal of ensuring Plaintiff's safety achieved.

Finally, the Court notes that nothing in the facts suggests an exigency or other emergency which required Sgt. Boz to repeat Plaintiff's diagnosis in a manner loud enough to be heard by other inmates. Additionally, the fact that Sgt. Boz described Plaintiff as having the "claps" loud enough so that four to six other inmates could hear him strongly suggests that the disclosure was made for humor or gossip purposes, which are never legitimate penological justifications.[3] Powell 175 F.3d at 112. Additionally, by conflating Plaintiff's condition with a sexually transmitted disease, Sgt. Boz may have inadvertently placed Plaintiff in danger by suggesting to other inmates he had been or was sexually active in prison, a suggestion which is antithetical to the penological interest of protecting inmate safety. Id. at 113 (noting that "sexually charged atmosphere of most prison settings"). Although the Court does not find that Defendant violated Plaintiff's constitutional rights, he could have been more careful about keeping Plaintiff's medical information private, as Sgt. Boz's actions exemplify the type of harm that can result when medical conditions, even those that are not necessarily highly stigmatizing or embarrassing, are not kept confidential.

///

---

[3]Sgt. Boz reference to the "claps" presumably refers to the sexually transmitted disease Gonorrhea, which is often referred to as the "Clap." About.com, Sexually Transmitted Diseases (STDs), available at http://std.about.com/od/bacterialstds/a/gonoverview.htm (last visited Mar. 30, 2010).

- 5 -

**Accordingly,**

**IT IS HEREBY ORDERED** denying Plaintiff's request for declaratory relief that Defendant's disclosure of Plaintiff's urinary-tract infection violated his right to medical privacy under the Fourteenth Amendment of the United States Constitution.

**IT IS HEREBY ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 18th day of June, 2010.

_____
Mary H. Murguia
United States District Judge